UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Bettina F. Virgil,<br>  *Petitioner*,<br><br>  v.<br><br>Donna Zickefoose,<br>  *Respondent.* | Civil No. 3:09cv148 (JBA)<br><br><br><br>April 19, 2010 |

RULING ON PETITION FOR HABEAS CORPUS

 Petitioner Betty Faye Virgil, convicted on January 10, 2008 in the United States District Court for the Eastern District of North Carolina and currently incarcerated at the Federal Correction Institution in Danbury, Connecticut, petitions under 28 U.S.C. § 2241 for a writ of habeas corpus, seeking an order that the Bureau of Prisons ("BOP") grant her early release upon her successful completion of the BOP's Residential Drug Abuse Treatment Program ("RDAP").

I. Background

 Virgil pleaded guilty to possession of a firearm by a convicted felon in violation of 21 U.S.C. §§ 922(g)(1) and 924 and was sentenced to a term of 51 months imprisonment. As part of her plea agreement, Virgil agreed to enroll in RDAP, created pursuant to 18 U.S.C. § 3621(b). RDAP involves both a 500-hour program in which an inmate participates while incarcerated as well as transitional services programming in a community-based program and/or a BOP institution. *See* 28 C.F.R. § 550.56. To incentivize participation in RDAP, the BOP may, in its discretion, grant early release to successful participants convicted of nonviolent offenses of up to one year. 18 U.S.C. § 3621(e)(2)(b).

Virgil signed an RDAP "notice to inmate" form on April 9, 2008, acknowledging her recognition that her crime excluded her from early release under BOP regulations. (*See* RDAP Notice for inmate Bettina Virgil, Ex. C. to Resp.'s Response [Doc. # 11], at 2.) She subsequently filed an administrative request, seeking eligibility for the "time off" RDAP incentive provided for by Section 3621(e)(2). On June 4, 2008, Warden Donna Zickefoose responded, explaining Petitioner's crime is an offense that precludes certain benefits, such as early release.[1] Thereafter, Virgil was placed on a waiting list to participate in the RDAP program and began active participation in May 2009.

II.     Discussion

    A.     Statutory and Regulatory Background

Congress amended 18 U.S.C. § 3621(b) in 1990 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Section 3621(e)(2)(b) provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."

To implement Section 3621(e)(2)(b), the BOP promulgated a series of regulations clarifying what is meant by a "nonviolent offense." In December 2000, the BOP promulgated a final rule that included in the class of inmates not eligible for early release those "inmates whose current offense is a felony. . . that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives." 28 C.F.R. § 550.58 (the "2000

---

[1] It is undisputed that Virgil has exhausted administrative remedies.

Rule"). In promulgating this rule, the BOP stated "Congress did not mandate that all eligible inmates must receive the early release incentive. The reduction in sentence is an incentive to be exercised at the discretion of the Bureau of Prisons." 65 Fed. Reg. 80745, 80747–748 (Dec. 22, 2000). The BOP went on to explain its rationale for the limitation:

> The first interim rule attempted to define the term "crime of violence" pursuant to 18 U.S.C. § 924(c)(3) ["an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"]. Due to varying interpretations of the regulation and caselaw, the Bureau could not apply the regulation in a uniform and consistent manner.
>
> The third interim rule [made final by 28 C.F.R. § 550.58] sought to resolve this complication. In the third interim rule, we used the discretion allotted to the Director for granting a sentence reduction to exclude inmates whose current offense is a felony . . . that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device).

*Id.*

The BOP promulgated a new rule, effective March 16, 2009 that is substantively the same as the 2000 Rule. *See* 28 C.F.R. § 550.55 (the "2009 Rule"). The primary difference between the 2000 and 2009 Rules governing early release eligibility is the rationale provided. The articulated rationale given in the administrative record for the 2009 Rule is:

> Under 18 U.S.C. § 3621(e), the Bureau has the discretion to determine eligibility for early release consideration (*See Lopez v. Davis*, 531 U.S. 230 (2001)). The Director of the Bureau exercises discretion to deny early release eligibility to inmates who have a felony conviction for the offenses listed in § 550,55(b)(5)(i)–(iv) because commission of such offenses illustrates a readiness to endanger the public. Denial of early release to all inmates convicted of these offenses rationally reflects the view that, in committing such offenses, these inmates displayed a readiness to endanger another's life. The Director of the Bureau, in his discretion, chooses to preclude from early

3

> release consideration inmates convicted of offenses involving carrying, possession or use of a firearm and offenses that present a serious risk of physical force against person or property, as described in § 550.55(b)(5)(ii) and (iii). Further, in the correctional experience of the Bureau, the offense conduct of both armed offenders and certain recidivists suggests that they pose a particular risk to the public. There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in *Lopez v. Davis*, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." *Id.* at 240. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences. It is important to note that these inmates are not precluded from participating in the drug abuse treatment program. However, these inmates are not eligible for early release consideration because the specified elements of these offenses pose a significant threat of dangerousness or violent behavior to the public. This threat presents a potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely. Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

74 Fed. Reg. 1892, 1895 (Jan. 14, 2009). In its 2009 Program Statement, the BOP states that "those inmates who [were] participating in or completed" RDAP before March 16, 2009 were not affected by the new rule. (BOP Prog. Stmt. § 5331.02, Ex. H to Resp.'s Response at 5, ¶ 6.) In other words, the 2009 Rule only applies to those inmates who began participation in RDAP *after* March 16, 2009.

    B.    Analysis

Petitioner has challenged the BOP's denial of her request for early release upon completion of RDAP on the grounds that the BOP's categorical exclusion of inmates convicted of non-violent felonies involving the use of weapons from early release eligibility

under the 2000 Rule is arbitrary and capricious[2] under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions, found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."), and violates her Fifth and Fourteenth Amendment equal protection rights because inmates convicted of the same offense in the Ninth Circuit are eligible for early release under Ninth Circuit jurisprudence. In support of both her APA and equal protection arguments, Virgil relies on *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008), in which the Ninth Circuit determined the 2000 Rule to be invalid under the APA because "the administrative record contains no rationale explaining the Bureau's decision to categorically exclude prisoners with convictions involving firearms from eligibility for early release under § 3621(e)." The BOP responds that not only is the 2000 Rule valid, the 2009 Rule, which it contends applies to Virgil, addresses any shortcomings found in *Arrington*.

Whether the 2000 or 2009 Rule applies to Virgil depends on whether she was "participating in" RDAP on or before March 16, 2009. Petitioner's counsel acknowledged during oral argument that she did not begin active participation in RDAP until May 2009; before then, she was on the RDAP waiting list. Nonetheless, Petitioner argues that a person on the waiting list for RDAP is "participating in" RDAP because inmates on the waiting must abide by the same rules as those actively participating in the program. However, BOP Program Statement 5330.11—which sets forth the terms of eligibility for RDAP and requires that inmates on the waiting list comply with the same rules as RDAP

---

[2] Petitioner only argues that the 2009 Rule does not apply to her, not that it is arbitrary and capricious.

participants—specifically distinguishes between inmates on the waiting list and RDAP participants, explaining that "[i]nmates waiting to enter the RDAP who are living on the treatment unit or on an adjacent unit are to adhere to the same unit rules and decorum as those inmates participating in the RDAP." Program Statement 5330.11 at 10 (Mar. 16, 2009). The Program Statement also states that "[i]nmates living on the RDAP unit must be: waiting for admission into the program; participating in the program; or RDAP completers." *Id.* at 11. Given that Program Statement 5330.11 clearly distinguishes between waiting–list inmates and participant–inmates, and because inmates on the waiting list who fail to meet certain criteria may not begin RDAP treatment without reapplying, being on the waiting list for RDAP and participating in RDAP are two distinct statuses. Thus, because Virgil was on the waiting list as of March 16, 2009, she was not "participating in" RDAP on or before that date, and the 2009 Rule applies to her.

    *1.*  *APA*

Because the 2009 Rule is applicable to Virgil, the Court need not determine whether the 2000 Rule is arbitrary and capricious. Any shortcomings in the administrative record for the 2000 Rule, which Petitioner argues lacks explanation of the rationale for excluding all inmates convicted of crimes involving the use or possession of firearms, are comprehensively addressed by the 2009 Rule. "The arbitrary and capricious standard of review is narrow and particularly deferential," and the Court's "task under this standard is to decide if the agency has considered the evidence, examined the relevant factors, and spelled out a satisfactory rationale for its action including the demonstration of a reasoned connection between the facts it found and the choice it made." *Envtl. Def. v. United States Envtl. Prot. Agency*, 369 F.3d 193, 201 (2d Cir. 2004). The Federal Register announcing the

updated 2009 Rule spells out in detail the BOP's rationale for excluding from early release eligibility inmates with weapons convictions or enhancements, explaining that those criminals who use weapons create a significant potential for violence, and criminals who use weapons demonstrate a readiness to endanger another's life.[3]  Thus, in promulgating the 2009 Rule, the BOP provided a satisfactory rationale for its actions and has not acted in an arbitrary and capricious manner.

### 2. *Equal Protection Clause*

Petitioner further claims that the BOP has violated her equal protection rights under the Fifth and Fourteenth Amendments because post-*Arrington*, inmates housed in the Ninth Circuit's geographic jurisdiction who participated in or completed RDAP before March 16, 2009 and were convicted of crimes involving possession of firearms are eligible for early release while those outside of the Ninth Circuit are not. However, Petitioner's argument is based on what she argues to be the unequal application of the 2000 Rule; because the 2000 Rule does not govern her early–release eligibility, she does not have standing to challenge its application.

---

[3] This rationale that "those convicted of offenses involving firearms pose a greater threat to public safety" was rejected in *Arrington* as a *post hoc* justification because it was not found in the administrative record for the 2000 Rule. 516 F.3d at 1113.

III.     Conclusion

Accordingly, Petitioner's Petition for Habeas Corpus [Doc. # 1] is DENIED.  The Clerk is requested to close the case.

IT IS SO ORDERED.


_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of April, 2010.